CLERK'S OFFICE
A TRUE COPY
Aug 12, 2020
s/ Daryl Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ABOUT THE LOCATION OF THE<br>CELLULAR TELEPHONE ASSIGNED CALL NUMBER<br>773.875.5712 | )<br>)<br>)  Case No.  20   MJ   176<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A

located in the ____Eastern____ District of ____Wisconsin____, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) and 846 | Distribution of controlled substances and conspiracy to commit same |

The application is based on these facts:
Please see attached affidavit

☐ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Deputy U.S. Marshal Robert Bressers
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
email and telephone _____ *(specify reliable electronic means)*.

Date: August 12, 2020

*Judge's signature*

City and state: Milwaukee, WI  United States Magistrate Judge William E. Duffin
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Deputy U.S. Marshal (DUSM) Robert Bressers, being first duly sworn, hereby depose and state as follows:

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A), for information about the location of the cellular telephone assigned call number **773-875-5712,** (the "Target Cell Phone"), whose service provider is **T-MOBILE/METRO PCS** ("Service Provider"), a wireless telephone service provider headquartered at 4 Sylvan, Parsippany, NJ 07054. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

3. I am a Deputy U.S. Marshal with the United States Marshals Service and have been employed with the Agency since 03/03/2010. One of my primary duties is to investigate and arrest state and federal Fugitives. I have obtained my Criminal Investigator Certification at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. Before my training at FLETC I received a Bachelor of Arts Degree in Sociology with a Criminal Justice emphasis at

University of Wisconsin-Whitewater. Your affiant is assigned to the U.S. Marshals Fugitive Task Force and has been since 2015, being involved in numerous fugitive investigations during this period of time. Many of these investigations were aided by procurement of records related to electronic communications and subsequent analysis of those records. In most of those cases, the records provided critical investigative leads and corroborative evidence. I have had previous experiences using cellular data in order to locate and apprehend fugitives from justice. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by law to conduct investigations.

4. The facts in this affidavit come from my training and experience, my review of documents and information obtained from other agents. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that **Tyrone V. BRYANT** has violated 21 U.S.C. Sections 841 and 846 (distribution of controlled substances and conspiracy to do the same). BRYANT was charged with these crimes on **02/18/2020** and is the subject of an arrest warrant issued on **02/20/2020**. There is also probable cause to believe that **BRYANT** is aware of these charges and has fled. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting **BRYANT**, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined 18 U.S.C. Section 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. Section 2711(3)(A)(i).

7. In February of 2019, case agents initiated an investigation into a group of known and unknown drug traffickers operating in the Milwaukee area, known as the Buffum Meinecke Boys ("BMB"), including BRYANT, Ramone LOCKE, aka "Mone," Amir LOCKE, aka "Big Mir," Joey VAZQUEZ, aka "Joey," Louis BATES, aka "Little Louis," Michael SMITH, aka "M&M," Garrell HUGHES, aka "Rello," Jesus PUENTES, aka "JP," Coury AGEE, aka "Lil C," Lamar JOHNSON, aka "Fresh," Luis Lorenzo, aka "Pito," Victor GONZALEZ, aka "Bey Bey," and others. As part of the investigation, case agents have interviewed several confidential sources, conducted physical and electronic surveillance, utilized pen registers, reviewed historical phone toll records, subpoenaed and reviewed records, and conducted controlled purchases of cocaine, crack cocaine, and heroin. As a result of the intelligence provided by the confidential sources and the controlled purchases, along with information obtained from other law enforcement techniques, case agents have identified various members of the BMB and identified several sources of supply.

8. As part of that investigation, law enforcement executed a "controlled buy" of over fifty grams of cocaine from BRYANT on October 30, 2019. I know a "controlled buy" is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When an informant is used, s/he is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and/or a monitoring device. When the transaction is completed, the informant meets case agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband, weapons, and money and then interviewed by the case agents about the drug transaction. A sample of the suspected drugs

is then field tested by the case agents for the presence of controlled substances and placed in inventory pursuant to normal inventory procedures. All of the calls to the target by the informants are consensually recorded calls under the direction and control of case agents and made in the presence of case agents. Additionally, case agents observe the informants dial the target's number on each occasion and the contact is verified through telephone records. The controlled buy on October 30, 2019 from BRYANT comported with this practice.

9. BRYANT was indicted on February 18, 2020, in Case No. 20 CR 41, along with many other BMB members, for various controlled substance offenses, including the "controlled buy" described above. An arrest warrant was issued for BRYANT in relation to those charges, but he remains a fugitive from justice. The United States Marshals Service is leading the investigation in order to locate and arrest BRYANT.

10. On 07/29/2020 a tip was received by the U.S. Marshal Service office in Phoenix, AZ. The caller claimed to be BRYANT's sister, Tyann Terry Bryant, DOB:08/10/1997. Tyann Bryant stated her brother, BRYANT, is living at the Broadstone Desert Sky Apartments located at 7850 W. McDowell Rd, Phoenix, AZ 85035. A check of law enforcement databases shows BRYANT was born in AZ and has family members in the area.

11. On or about 08/06/2020 an investigative inquiry was conducted by Deputy U.S. Marshal Ali Hyali with Arizona Department of Economic Security (AZ DES). AZ DES reported that on 07/19/2020, BRYANT applied for unemployment benefits and self-reported his address as 1825 W. Ray Road Apt #1089, Chandler, AZ 85224. In addition, BRYANT reported his phone number as being the Target Cell Phone: **773-875-5712**. Law enforcement databases show the Target Cell Phone's number **773-875-5712** to be an active wireless number with T-MOBILE/METRO PCS (the "Service Provider").

12. In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

13. Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

14. I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

15. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can

be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

16. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

17. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

18. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

19. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may

be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

20. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

21. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

# ATTACHMENT A

## Property to Be Searched

Records and information associated with the cellular device assigned **773-875-5712** (referred to herein and in Attachment B as "the Target Cell Phone"), with listed subscriber(s) unknown that is in the custody or control of **T-MOBILE/METRO PCS** (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 4 Sylvan, Parsippany, NJ 07054

# ATTACHMENT B

## Particular Things to be Seized

**I.     Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

- a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period **10/30/2019 – 08/11/2020**:

    i. Names (including subscriber names, user names, and screen names);

    ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii. Local and long distance telephone connection records;

    iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v. Length of service (including start date) and types of service utilized;

    vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

2

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT")].

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

  i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

  ii. Source and destination telephone numbers;

  iii. Date, time, and duration of communication; and

  iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

  i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the

> Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of either (i) violations of 21 U.S.C. Sections 841 and 846 involving Tyrone V. BRYANT or (ii) BRYANT's flight from justice, since October 30, 2019, including, but not limited to, information pertaining to the following matters:

(a) BRYANT's location; and

(b) BRYANT's drug trafficking activities;

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.